UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OLMAN ARIEL BRIONES MONTENEGRO,

Petitioner,

v.

WARDEN/FACILITY ADMINISTRATOR, NORTHWEST PROCESSING CENTER,

Respondent.

CASE NO. 2:26-cv-02743-LK

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS

This matter comes before the Court on a Petition for Writ of Habeas Corpus filed by petitioner Olman Ariel Briones Montenegro. Dkt. No. 3. For the reasons stated below, the Court grants in part and denies in part the petition.[1]

## I. BACKGROUND

Briones Montenegro is a native and citizen of Nicaragua. Dkt. No. 8 at 1. On July 19, 2022,

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

United States Border Patrol encountered him near Del Rio, Texas, and released him on parole the next day due to "detention capacity limitations." *Id.* His parole expired on September 18, 2022. *Id.* at 2.

On July 23, 2024, U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") issued Briones Montenegro a Notice to Appear ("NTA"), charging him as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1182(a)(6)(C)(i)), as a noncitizen present in the United States without being admitted or paroled. *Id.*; *see also* Dkt. No. 7-4 (NTA). On September 6, 2024, ICE mailed Briones Montenegro an Order of Release on Recognizance ("OREC") that included the condition that he must not violate any local, state, or federal laws. Dkt. No. 8 at 2; *see also* Dkt. No. 7-5 (mostly illegible copy of the OREC).

Briones Montenegro attended a master calendar hearing on January 22, 2025, and requested more time to retain counsel. Dkt. No. 8 at 2. The immigration judge granted a continuance and scheduled another master calendar hearing for May 6, 2025. *Id.* Briones Montenegro has a merits hearing scheduled for October 21, 2026. *Id.*

Briones Montenegro has some criminal history. On March 18, 2024, the Renton Police Department arrested him on the charge of Driving without License under Section 46.20.005 of the Revised Code of Washington. Dkt. No. 8 at 2. On March 19, 2024, Renton Municipal Court imposed a $300 fine and sentenced him to two days in jail. *Id.* He has also been arrested on four occasions; the disposition of these cases remains pending: (1) on January 2, 2025, the Washington State Patrol arrested him in Bellevue, Washington for Assault in 4th Degree (domestic violence); (2) on September 7, 2025, the Tukwila Police Department arrested him for Protection Order Violation (domestic violence); (3) on November 2, 2025, the Seattle Police Department arrested Briones Montenegro for Stalking (domestic violence and violation of court order); and (4) on May

19, 2026, the Chelan County Sheriff arrested Briones Montenegro for Driving While License Suspended in 3rd degree and Protection Order Violation. *Id.* at 3; Dkt. No. 7-3 at 3.

According to Respondent, Briones Montenegro violated his OREC by incurring these arrests and by committing check-in violations on October 14, 2025, November 4, 2025, March 3, 2026, April 7, 2026, and June 9, 2026. Dkt. No. 8 at 3. According to Briones Montenegro, he was "impeccably complying with the terms of his supervision program" when he was re-detained. Dkt. No. 3 at 2.

On July 13, 2026, ERO took Briones Montenegro into custody and cancelled his OREC. Dkt. No. 8 at 3. According to Deportation Officer Christopher Hubbard, "ERO determined that Petitioner had violated terms of his OREC due to his arrest record and ATD violations." *Id.* ERO served Briones Montenegro with a Warrant for Arrest of Alien and Notice of Custody Determination and transferred him to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington on July 13, 2026. *Id.*; Dkt. No. 7-1 at 2 (arrest warrant); Dkt. No. 7-2 (custody determination).

Briones Montenegro filed his proposed petition for habeas corpus on August 3, 2026, Dkt. No. 1, which the Court docketed, Dkt. No. 3, after he paid the filing fee. The United States, as an "interested non-party"[2] filed a return to the petition on August 20, 2026, Dkt. No. 6, and Briones Montenegro filed a traverse on August 27, 2026, Dkt. No. 9.[3]

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[3] The Court has not considered Briones Montenegro's traverse or declaration because they are unsigned. Dkt. Nos. 9, 10; *see also* Dkt. No. 11 (notice of filing deficiency).

## II. DISCUSSION

Briones Montenegro contends that the government violated his due process rights by re-detaining him (1) while he was complying with his terms of release and (2) "without prior notice, without a warrant, without a prior hearing where the Government demonstrated a substantial change in his circumstances or a flight risk/danger, and without being based on a felony offense[.]" Dkt. No. 3 at 2. He requests an order requiring his immediate release and declaring that "his re-detention and indefinite custody" violates his due process rights. *Id.* at 10.

Respondent contends that Briones Montenegro is mandatorily detained, and that, even if his detention is not mandatory, he was lawfully re-detained due to failure to comply with his OREC conditions. Dkt. No. 6 at 2. It argues that "[e]ven if this Court were to grant the petition. . . the proper remedy is an order directing the immigration court to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a)" rather than release. *Id.* at 10.

### A. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the

scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Petitioner Has Established a Due Process Violation**

Like many petitions before the Court, Briones Montenegro's petition pays minimal attention to the statute to which he is subject and instead essentially insists that due process demands the same procedures no matter which statute applies. *See generally* Dkt. No. 3. But the Ninth Circuit has rejected such a proposition, and this Court does too. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place[.]" *Id.*; *see, e.g.*, *id.* at 1203 (because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"); *Demore*, 538 U.S. at 529 n.11 (in response to a dissent "suggesti[ng] that [noncitizens] are entitled to an immediate hearing,"

pointing to *Zadvydas*, in which the Supreme Court "permit[ed] [noncitizens] to be detained for several months prior to such a hearing").

Meanwhile, despite recent controlling Ninth Circuit precedent, *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), Respondent argues that Briones Montenegro is subject to Section 1225(b)(2)(A). Dkt. No. 6 at 5–7. Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

1. <u>Process Required by the Statute</u>

*(a) 8 U.S.C. § 1226(a) is the Applicable Statutory Authority*

Respondent avers that Briones Montenegro "remains subject to mandatory detention under 8 U.S.C. § 1225(b) as an applicant for admission who was initially processed at the border." Dkt. No. 6 at 5. Section 1225 applies to "applicants for admission" to the United States. An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit," § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "That express exception to detention implies that there are no *other* circumstances under which aliens detained under §1225(b) may be released." *Id.* at 300.

As the Ninth Circuit recently held, "[noncitizens] present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez*, 183 F.4th at 1165; *see also Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026). "The implication of the government's position is that Congress in 1996 made a major change to the immigration laws by subjecting millions of unadmitted [noncitizens] present in the United States to mandatory

detention, but that this change then went unnoticed and unheeded, with the Executive Branch for the next three decades violating Congress's assertedly unambiguous mandatory detention directive by treating these [noncitizens] as subject to release on bond." *Rodriguez Vazquez*, 184 F.4th at 1164. But "the text, context, and structure of the INA, considered as a whole, did not direct such a significant, yet overlooked, change in the law." *Id.* Moreover, under Respondent's interpretation, "Congress's recent handiwork in the Laken Riley Act," which carved out an additional category of noncitizens from section 1226(a)'s discretionary detention scheme who now fall under section 1226(c)'s mandatory detention authority, "would be rendered superfluous, because those aliens subject to § 1226(c)(1)(E) would already be subject to mandatory detention under § 1225(b)(2)(A), as inadmissible aliens present in the United States." *Id.* at 1185.

Consistent with the Ninth Circuit's interpretation of the governing statutory scheme, the government has treated Briones Montenegro as subject to discretionary detention under 8 U.S.C. § 1226 from the time he was released on an OREC until his arrest. Dkt. No. 7-5 (OREC); *see also* Office of Homeland Security Statistics, *Glossary: Release on Recognizance*, https://ohss.dhs.gov/glossary (last visited September 3, 2026) (defining "Release on Recognizance" to mean "release from ICE detention subject to reasonable conditions of [a noncitizen] in removal proceedings after having been issued a Notice to Appear (NTA) or [a noncitizen] with an appeal pending with the Board of Immigration Appeals (BIA)" "*[p]ursuant to section 236(a) of the INA*" (emphasis added)). Furthermore, the Notice of Custody determination dated July 13, 2026 ordered Briones Montenegro detained pursuant "to the authority contained in section 236" of the INA, codified at 8 U.S.C. § 1226, Dkt. No. 7-2 at 2, and the I-213 form from the same date listed him as a noncitizen "present without admission or parole"—not "an arriving alien," Dkt. No. 7-3 at 3. Nothing in the record prior to his arrest suggests that his release was

pursuant to Section 1225(b). These facts demonstrate that his detention is governed by 8 U.S.C. § 1226, not 8 U.S.C. § 1225.

Briones Montenegro argues that he "his re-detention and continued confinement violate constitutional guarantees of due process of law[.]" Dkt. No. 3 at 2. Because "the applicable statutory process shapes [the petitioner's] procedural due-process rights," *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020), the Court addresses the process required here.

*(b) Procedures Required under 8 U.S.C. § 1226(a) and Implementing Regulations*

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Id.* at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter*

*of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (B.I.A. 2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the BIA. 8 C.F.R. § 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075, Dkt. No. 10 at 2 (W.D. Wash. Nov. 4, 2025) (Respondents' brief stating that it has "long been recognized by the Board of Immigration Appeals [that] a senior immigration official's exercise of discretion to revoke an individual's release under 8 C.F.R. § 236.1(c)(9) is limited to situations in which there has been a 'change in circumstance' since the non-citizen was initially released."). Only specific officials may revoke a noncitizen's OREC under 8 C.F.R. § 236.1(c)(9).

2. Due Process Requirements

As discussed above, Briones Montenegro argues that "his re-detention and continued confinement violate constitutional guarantees of due process of law[.]" Dkt. No. 3 at 2. Respondent does not contend that Briones Montenegro received a pre-deprivation hearing or notice, *see generally* Dkt. No. 6, but contends that "due process did not require written notice and a pre-deprivation hearing under the specific facts of this case," *id.* at 6 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80.

*(a) Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[]

an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Briones Montenegro has been living in the United States since July 2022, first on parole and then on an OREC before he was re-detained. Dkt. No. 8 at 1–2. He has "established deep ties, family bonds, and social and economic integration in the State of Washington[.]" Dkt. No. 3 at 4. He is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody.

*(b) Procedural Protections*

To determine what procedures are constitutionally sufficient to protect a petitioner's liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and

district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Briones Montenegro has an interest in remaining out of immigration detention. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Despite his liberty interest being "indeterminate" under an OREC, that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* Relatedly, Briones Montenegro has an interest in the government adhering to its own procedures requiring (1) a revocation made by an appropriate official and (2) a bond hearing upon request. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); 8 C.F.R. § 236.1(c)(9). This factor favors Briones Montenegro.

Turning to the second factor, Respondent avers that "ICE did not act on a categorical or generalized basis." Dkt. No. 6 at 8. Instead, "[b]efore issuing the Form I-200 warrant, ERO conducted an individualized assessment that considered [his] unlawful entry, his convictions for domestic violence-related crimes and protection order violations, as well as his check-in violations." *Id.* However, Respondent has filed no evidence to show that Briones Montenegro was "convict[ed] for domestic violence-related crimes and protection order violations" rather than arrested for those crimes (with dispositions pending). Dkt. No. 8 at 3.

Moreover, Respondent purported to detain Briones Montenegro under 8 U.S.C. § 1225(b), stripping him of his right to a bond hearing. *See* Dkt. No. 6 at 5. Nor has Respondent shown that Briones Montenegro's OREC was revoked by an appropriate official. In fact, the copy of the OREC Respondent filed is mostly illegible and does not indicate who revoked the OREC. Dkt. No. 7-5.[4] The risk of erroneous deprivation is significant where the government fails to follow its

[4] The regulation provides that only the "district director, acting district director, deputy district director, assistant

own procedures, thus depriving the noncitizen of process due. *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where ICE "did not provide petitioner the process required by its own regulations").

The additional procedures afforded under Section 1226(a) would substantially mitigate the risk of erroneous deprivation of Briones Montenegro's liberty, because those procedures allow detention only where the petitioner presents a flight risk or danger to the community. An adverse decision by an immigration judge in a bond hearing can further be appealed, and Briones Montenegro could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [the petitioner] the opportunity to be heard by a neutral decisionmaker." *Rodriguez Diaz*, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of Section 1226(a) would render "the risk of erroneous deprivation . . . relatively small") (citation omitted). While Respondent claims that Briones Montenegro was re-detained because he violated the terms of his OREC, Dkt. No. 6 at 7–8, that does not excuse the government's compliance with the applicable regulations. This factor weighs in favor of Briones Montenegro.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

---

district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign)" are authorized to revoke a noncitizen's OREC. 8 C.F.R. § 236.1(c)(9); *see also* 8 C.F.R. § 1236.1(c)(9) (listing district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign)").

procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that enforcing immigration laws, including "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, those interests are not impermissibly burdened by requiring the government to follow its own procedures regarding OREC revocations and bond hearings. Therefore, the Court finds that this factor too weighs in favor of Briones Montenegro.

Under *Mathews*, the Court finds that the United States failed to provide Briones Montenegro with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful.

**C. Remedy**

Briones Montenegro argues that release is the appropriate remedy, Dkt. No. 3 at 10, while Respondent argues that the appropriate remedy is a post-deprivation bond hearing, Dkt. No. 6 at 9–10. Here, it appears that sufficient changed circumstances exist, Dkt. No. 8 at 3, such that a bond hearing is the appropriate remedy. *See, e.g.*, *Geler v. Blanche*, No. 2:26-CV-00481-LK, 2026 WL 1251660, at *7 (W.D. Wash. May 7, 2026).

The specific harm faced by Briones Montenegro is his detention for months without a bond hearing pursuant to Section 1226(a). "The Court finds that harm is remedied by ordering a bond hearing within seven days," and "[g]iven the due process rights at stake," if a bond hearing compliant with the Court's order is not provided promptly within that time frame, Briones Montenegro shall be immediately released on the terms of his most recent OREC or other terms appropriate under Section 1226(a). *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1162 (D. Nev. 2025); *see also Martinez Flores v. Kaiser*, No. 1:26-CV-00582-KES-CDB (HC), 2026 WL 482739, at *9 (E.D. Cal. Feb. 20, 2026) (ordering same); *Solano Gallardo v. Warden*, No. 5:26-CV-00485-SSS-BFM, 2026 WL 483207, at *1 (C.D. Cal. Feb. 20, 2026) (ordering same); *Araiza*

*v. Hermosillo*, No. 2:25-CV-02139-TL, 2025 WL 3516103, at *2 (W.D. Wash. Dec. 8, 2025) (ordering same); *see also Cardozo v. Bostock*, No. 2:25-cv-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) ("In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. (quoting *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008))). Because the government has refused to follow its own regulations and now insists that a hearing was not required despite its regulations clearly requiring otherwise, *see generally* Dkt. No. 6, the Court finds that Briones Montenegro is entitled to a hearing before an immigration judge at which the government is required to prove by clear and convincing evidence that he is a danger to the community or a flight risk.

## III. CONCLUSION

For the foregoing reasons, Briones Montenegro's petition for a writ of habeas corpus, Dkt. No. 3, is GRANTED IN PART and DENIED IN PART. The Court ORDERS the following relief:

1. Respondent must provide Briones Montenegro with a bond hearing before an immigration judge within seven days of the date of this Order; provided, however, that any continuance granted at Briones Montenegro's request will toll this period. At the hearing, the government will have the burden of proving by clear and convincing evidence that Briones Montenegro is a danger to the community or a flight risk. Respondent must ensure that the hearing is recorded. Respondent is enjoined from denying bond to Briones Montenegro on the basis that he is detained pursuant to 8 U.S.C. § 1225(b).

2. If a bond hearing compliant with this Order is not provided within seven days (or within any continuance granted with the consent of Briones Montenegro), Briones Montenegro shall be released from ICE custody immediately on the terms of his

most recent OREC or other terms consistent with Section 1226(a). Respondent must file a Status Report with the Court either confirming that Briones Montenegro received a bond hearing—and the results of that hearing—or otherwise confirming his release by the later of September 17, 2026 or three days after any continued bond hearing if such continuance was granted with the consent of Briones Montenegro).

3. If the immigration judge does not order Briones Montenegro released, Respondent is prohibited from transferring Briones Montenegro from this jurisdiction—i.e., the Western District of Washington—for 10 days following the immigration judge's decision, unless such transfer is necessary for medical evaluation, medical treatment, release, or extenuating circumstances.

Dated this 3rd day of September, 2026.

Lauren King
United States District Judge